RAVARY v REED

Docket No. 94802. Submitted July 1, 1987, at Detroit. Decided October 5, 1987.

Ray R. Ravary, after learning that he was the subject of an investigation by a private investigator, brought an action in Wayne Circuit Court against Thomas Reed (also known as Bob Wilson), the private investigator, the Reed Detective & Security Agency, and others. Plaintiff claimed libel and slander, invasion of privacy, intentional infliction of emotional distress, and intentional interference with a contractual, professional relationship against defendants Reed and Reed Detective & Security Agency (hereafter collectively referred to as Reed). Plaintiff submitted interrogatories to Reed, which included questions concerning the identity of the person, firm or entity who hired Reed to investigate plaintiff and the details of that investigation. Reed refused to answer the interrogatories claiming privilege under the Private Detective License Act. Plaintiff filed a motion to compel answers to the interrogatories and the trial court, Susan D. Borman, J., granted the motion, ruling that the privilege does not apply in this case. Reed's motion for a rehearing and a protective order was subsequently denied by the trial court. Reed sought and was granted leave to appeal before the Court of Appeals, which entered an order staying the proceedings in the trial court.

The Court of Appeals *held:*

The trial court abused its discretion in granting plaintiff's motion to compel answers to the interrogatories. Section 20 of the Private Detective License Act provides that any communication by a client to a private investigator licensed under the act and any information secured in connection with an assignment for a client is privileged. The privilege applies under the facts of this case since disclosure of Reed's client's name would

REFERENCES

Am Jur 2d, Depositions and Discovery §§ 21 *et seq.*; 373 *et seq.*

Am Jur 2d, Witnesses §§ 141 *et seq.*

Privilege as to communications between lay representative in judicial or administrative proceedings and client. 31 ALR4th 1226.

be tantamount to disclosure of the substance of confidential communications between Reed and the client.

Reversed.

1. EVIDENCE — PRIVATE INVESTIGATORS — PRIVILEGE.

Any communication by a client to a private investigator licensed under the Private Detective License Act and any information secured in connection with an assignment for the client is privileged; the identity of a private investigator's client is privileged from disclosure where its disclosure would be tantamount to disclosure of the substance of confidential communications between the private investigator and his client (MCL 338.840; MSA 18.184[20]).

2. MOTIONS AND ORDERS — DISCOVERY — APPEAL.

The decision to grant or deny a discovery motion is within the discretion of the trial court and will be reversed on appeal only if there has been an abuse of discretion.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Robert H. Darling*), for plaintiff.

*Charlton & Bershad* (by *David M. Budka*), and *Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *John P. Jacobs* and *Deanna E. Hazen*), Attorneys of Counsel, for defendants.

Amicus Curiae:

*Alan R. Miller, P.C.* (by *Joseph F. Yamin*), for Michigan Association of Private Detectives and Security Agencies.

Before: J. H. GILLIS, P.J., and D. F. WALSH and J. R. ERNST,* JJ.

D. F. WALSH, J. Defendants Thomas Reed (also known as Bob Wilson), Reed Detective & Security Agency and Bob Wilson appeal by leave granted from a May 16, 1986, circuit court order granting the motion of plaintiff Ray R. Ravary, to compel

---

* Circuit judge, sitting on the Court of Appeals by assignment.

answers to interrogatories, and the August 14, 1986, order denying defendants' motion for rehearing and for a protective order.

Defendant Thomas Reed is the owner and operator of defendant Reed Detective & Security Agency, a licensed private detective agency. At issue is whether defendants (hereinafter collectively referred to as Reed) may be compelled to divulge to plaintiff the name of the person or entity who hired them to investigate plaintiff, a hearing officer for the Bureau of Workers' Disability Compensation.

Plaintiff alleged in his June 6, 1985, complaint that Reed had embarked on "a campaign to smear Plaintiff's reputation and/or to impute professional impropriety and/or criminal behavior on the part of Plaintiff." Plaintiff further alleged that, in the course of this campaign, Reed had contacted the director and deputy director of the Bureau of Workers' Disability Compensation.[1] Claims of libel and slander, invasion of privacy, intentional inflic-

---

[1] In a December 4, 1984, letter to Rudy Redmond, director of the bureau, defendant Thomas Reed, under the name Bob Wilson, requested information regarding "any reprimands, violations, or infractions" charged against plaintiff during his tenure as hearing officer. Answers to the following questions were requested:

1. Have there been any complaints against this individual?

2. Have there been any law suits?

3. Has there ever been any attempt to get him transferred to another district?

4. Has he ever taken any time off work?

5. Are there any infractions in his file that would indicate any discrepancies in his work performance?

In a January 11, 1985, letter, deputy director Ervin Vahratian responded:

I. At various times we do get complaints about our Administrative Law judges. The Bureau has not taken any disciplinary action against Ray Ravary because of any such complaints.

II. During Mr. Ravary's tenure as an Administrative Law Judge there have been two litigated matters involving Mr.

tion of emotional distress and intentional interference with a contractual, professional relationship were alleged by plaintiff against Reed.

Plaintiff submitted interrogatories to Reed. They included questions concerning the identity of the person, firm or entity who hired Reed to investigate plaintiff and the details of that investigation. Reed refused to answer these interrogatories, claiming privilege under MCL 338.840; MSA 18.184(20). Plaintiff filed a motion to compel answers to interrogatories. The court found that the statutory privilege did not apply, and ordered Reed to provide the requested information. Reed's motion for a rehearing and for a protective order was denied. This Court granted Reed's application for leave to appeal and ordered a stay of proceedings. We reverse.

The regulation and licensing of private detectives are controlled by the Private Detective License Act. 1965 PA 285, MCL 338.821 *et seq.*; MSA 18.184(1) *et seq.*[2] The issue presented in this case is

Ravary and the Bureau Director. One took place in 1966, the other in 1976. In each case Administrative Law Judge Ravary was successful.

III. In May of 1976, the Bureau announced rotation policy that effected [sic] all hearing districts within the State. Twelve Judges, including Administrative Law Judge Ravary, were involved. No action was taken to rotate Administrative Law Judge Ravary specifically.

IV. From the Bureau records and to our knowledge, Mr. Ravary has taken only annual leave and sick leave as provided by civil service and as approved by the Director of the Bureau.

V. From the Bureau records and to our knowledge, there has [sic] not been any discrepancies and/or infractions in Administrative Law Judge Ravary's performance. During his tenure as an Administrative Law Judge there was one instance where the Director initiated disciplinary action. This occurred in 1966 and was the only such instance, subsequently that matter was resolved in Mr. Ravary's favor.

Plaintiff's claims against Rudy Redmond and Ervin Vahratian are not involved in this appeal.

[2] The purposes of the act are set forth in its title:

whether the information sought by plaintiff is privileged under § 20 of the act, MCL 338.840; MSA 18.184(20), which provides in its entirety:

> (1) Any person who is or has been an employee of a licensee shall not divulge to anyone other than his employer or former employer, or as the employer shall direct, except as he may be required by law, any information acquired by him during his employment in respect to any of the work to which he shall have been assigned by the employer. Any employee violating the provisions of this section and any employee who wilfully makes a false report to his employer in respect to any work is guilty of a misdemeanor.
>
> (2) Any principal, manager or employee of a licensee who wilfully furnishes false information to clients, or who wilfully sells, divulges or otherwise discloses to other than clients, except as he may be required by law, any information acquired by him or them during employment by the client is guilty of a misdemeanor, and shall be subjected to immediate suspension of license by the secretary of state and revocation of license upon satisfactory proof of the offense to the secretary of state. *Any communications, oral or written, furnished by a professional man or client to a licensee, or any information secured in connection with an assignment for a client, shall be deemed privileged with the same authority and dignity as are other privileged communications recognized by the courts of this state.* [Emphasis supplied.][3]

The statute reflects the Legislature's determina-

AN ACT to license and regulate private detectives and investigators; to provide penalties for violations; to protect the general public against unauthorized, unlicensed and unethical operations by private detectives and private investigators; and to repeal certain acts and part of acts.

[3] 1965 PA 285 repealed 1927 PA 383, as amended by 1929 PA 163, CL 1948 §§ 338.801-338-813, which did not contain the emphasized privilege provision. See CL 1948 § 338.810.

tion that broad protection is to be accorded the private detective-client relationship. Any communication by a client to a licensee and any information secured in connection with an assignment for a client is privileged. The Legislature's express extension to those communications of the authority and dignity conferred upon other, judicially recognized privileged communications prompts us to construe the scope of this privilege by analogy to the attorney-client privilege.[4]

[4] As described by Wigmore, the four fundamental conditions necessary to the establishment of a privilege against the disclosure of communications are:

(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation. [8 Wigmore, Evidence (McNaughton rev), § 2285, p 527. Emphasis in original.]

Discussing "sundry confidential communications," Wigmore, at § 2286, p 532, described recent attempts to establish new privileges by statute:

In recent times in the United States, however, legislation has been sought, here and there successfully, to establish new privileges. Most of these attempts have been made by organized occupational groups who believe that for the protection of their own particular interests a privilege is needed and is justified. In no instance has it been made to appear that the occasional disclosure, in judicial proceedings, of the communication sought to be kept secret would be injurious to the general exercise of the occupation, or that all the conditions exist which justify a general privilege (§ 2285 *supra*). Statutes which do no more than penalize general breaches of confidence—e.g., all statutes respecting disclosure by *detectives*[19] . . . —explicitly permit disclosure in judicial proceedings. They should be distinguished from statutes erecting testimonial privileges.

[19] Four states have statutes making it unlawful for a private

The attorney-client privilege attaches to communications made by a client to his or her attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation. *Alderman v The People,* 4 Mich 414, 422 (1857), *Kubiak v Hurr,* 143 Mich App 465, 472-473; 372 NW2d 341 (1985). The purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed. *Id.,* 473. The privilege is personal to the client, who alone can waive it. *Passmore v Passmore's Estate,* 50 Mich 626, 627; 16 NW 170 (1883).

As a general rule, the identity of an attorney's client is information which is not protected from disclosure by the attorney-client privilege. *In re Grand Jury Investigation # 83-2-35,* 723 F2d 447, 451 (CA 6, 1983), cert den sub nom *Durant v United States,* 467 US 1246; 104 S Ct 3524; 82 L

---

detective to divulge information acquired on behalf of a client except as he may be required by law so to do. Cal Bus & Prof Code § 7538; Mass Gen Laws Ann c 147, § 28 (1958) (construed by *Attorney-General v Pelletier,* 240 Mass 264; 134 NE 406 (1922), not to apply to exclude testimony at a trial); NY Gen Bus Law § 82 (construed by *People v Roach,* 215 NY 592; 109 NE 682 (1915), not to apply to exclude testimony at legal proceedings); Pa Stat Ann tit 22, § 24 (1955).

---

See also Ariz Rev Stat Ann § 32-2425; Conn Gen'l Stat Ann § 29-156g; Del Code Ann 24 § 1315; Fla Stat Ann 493.32; Hawaii Rev Stat § 463-15; Ill Ann Stat Ch 111, ¶ 2680; Kan Stat Ann 75.7b08; Minn Stat Ann 326.336; Mont Code Ann 37-60-402; NJ Stat Ann 45:19-15; NM Stat Ann 61-27-25; NC Gen Stat 74C-16; Okla Stat Ann 59, § 1750.8; Vt Stat Ann 26, § 3179.

The Michigan statute not only penalizes breaches of confidence but clearly establishes a testimonial privilege. The statute represents a declaration by the Legislature that the conditions necessary to the establishment of a privilege are present in the private detective-client relationship. This Court is bound to enforce the policy set forth by the Legislature. See *In re Petition of Delaware,* 91 Mich App 399, 405; 283 NW2d 754 (1979), lv den 407 Mich 911 (1979), discussing the similarly broad polygrapher privilege. MCL 338.1728(2); MSA 18.186(28)(2).

Ed 2d 831 (1984); 81 Am Jur 2d, Witnesses, § 213, pp 244-246; Wigmore, Evidence (McNaughton rev), § 2313, p 609. See, generally, Anno: *Disclosure of name, identity, address, occupation, or business of client as violation of attorney-client privilege,* 16 ALR3d 1047. An exception to this general rule is that the attorney-client privilege extends to identification of the client if such disclosure would be tantamount to revealing the attorney-client relationship and confidential communications. *In re Grand Jury Investigation # 83-2-35, supra,* 453.

The general rule and this exception were discussed in *NLRB v Harvey,* 349 F2d 900 (CA 4, 1965). In that case, a private detective disclosed to the National Labor Relations Board that he had been employed by attorney Harvey to investigate E. O. Shrader, a union representative.[5] The NLRB then issued a subpoena duces tecum to Harvey, directing him to produce all records concerning the investigation. Harvey asserted the attorney-client privilege and declined to name his client. The Circuit Court of Appeals agreed that, if Harvey was retained for the purpose of rendering a legal opinion, performing a legal service or representing the client in a legal proceeding, 349 F2d 905-907, the attorney-client privilege protected against disclosure of the identity of Harvey's client:

> Generally, the identity of the attorney's client is not considered privileged matter.
>
> \*   \*   \*
>
> To the general rule is an exception, firmly bed-

---

[5] Link, the private detective, had initially refused to disclose the name of his client. The Fourth Circuit affirmed the district court judgment holding Link in contempt. *Link v NLRB,* 330 F2d 437 (CA 4, 1964). There was no claim of privilege asserted by Link. The *Link* decision is thus not persuasive authority in support of plaintiff's claim in this case.

ded as the rule itself. The privilege may be recognized when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication. Application of this rule may be found in *Chirac v Reinicker,* 24 US (11 Wheat) 280, 6 L Ed 474 (1826); *Baird v Koerner,* 279 F2d 623, 95 ALR2d 303 (CA 9, 1960); *Elliott v United States,* 23 US App DC 456 (1904); *In re Kaplan,* 8 NY2d 214, 203 NYS2d 836, 168 NE2d 660 (1960); cf. *United States v Pape,* 144 F2d 778, 783 (CA 2, 1944) (dissent).

It appears that the exception to the rule is applicable in this case. Here, upon identification of the client, it will be known that the client wanted information about Shrader. More than the identity of the client will be disclosed by naming the client. [349 F2d 904-905.]

In this case, the statute confers privileged status on any communication by the client to Reed. That privilege clearly attached to the communication of the client's desire to obtain information about plaintiff. As in *NLRB v Harvey, supra,* disclosure of the client's name under the facts of this case would be tantamount to disclosure of the substance of that confidential communication.[6]

Plaintiff urges analogy to cases where a client's communications to an attorney are intended to go to a third party, *Owen v Birmingham Federal Savings & Loan Ass'n,* 27 Mich App 148, 163; 183 NW2d 403 (1970), or cases where communications to an attorney are made for the purpose of perpetrating a fraud, *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC,* 107 Mich App 509, 519; 309 NW2d 645 (1981). The allegations of plaintiff's complaint do not support either attempted analogy.

Under MCR 2.302(B)(1), a party "may obtain

---

[6] We emphasize that our holding is limited to the facts presented.

discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The decision to grant or deny a discovery motion is within the discretion of the trial court, whose ruling will be reversed only if there has been an abuse of discretion. *US Fire Ins Co v Citizens Ins Co of America,* 156 Mich App 588, 591; 402 NW2d 11 (1986). Because we hold that the information sought by plaintiff in this case was privileged, we find that the trial court abused its discretion in granting plaintiff's motion to compel answers to interrogatories.

Reversed.