EYDE v EYDE

Docket No. 100175. Submitted March 2, 1988, at Lansing. Decided
October 4, 1988. Leave to appeal denied, 432 Mich —.

George F. Eyde and his brother, Louis J. Eyde, are business
partners in various ventures. Kathleen A. Eyde, Louis Eyde's
wife, filed for divorce and sought to discover certain documents
held by Michigan National Bank relating to Louis Eyde's
business dealings. George Eyde brought an action in the Ing-
ham Circuit Court against Kathleen and Louis Eyde to prevent
the discovery of the documents as an infringement of his
privacy. An order was entered in the case and in the divorce
case allowing the discovery of all relevant documents under
conditions to promote their confidentiality, Carolyn Stell, J.
Plaintiff appealed.

The Court of Appeals *held:*

1. Louis Eyde's financial records held by the bank are not
privileged.

2. Plaintiff does not have standing to challenge the discovery
of the relevant documents in defendant's divorce proceeding.

3. A court may restrict discovery in order to prevent annoy-
ance, embarrassment, oppression or undue burden or expense.
This the court did and in so doing did not abuse its discretion.

Affirmed.

1. Evidence — Discovery.

The modern tendency is to broaden the scope of discovery when
necessary to facilitate preparation, guard against surprise and
expedite justice.

2. Divorce — Evidence — Financial Records — Privilege.

The financial records of a party to a divorce held by a bank are
not privileged and may be subject to discovery where relevant
to determining the extent of the marital estate.

3. Evidence — Discovery — Court Rules.

A court may restric'. discovery in order to prevent annoyance,

References

Am Jur 2d, Depositions and Discovery §§ 21 *et seq.,* 40, 89, 90.
Spouse's right to discovery of closely held corporation records
during divorce proceedings. 38 ALR4th 145.

embarrassment, oppression or undue burden or expense (MCR 2.302[C]).

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Joseph A. Fink* and *Kenneth T. Brooks*), for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *Lawrence B. Lindemer* and *William K. Fahey*), for Kathleen Ann Eyde.

Before: SAWYER, P.J., and KELLY and J. J. RASHID,* JJ.

PER CURIAM. In the case at bar, the trial court entered an order compelling discovery of certain business documents held by Michigan National Bank. Plaintiff is the brother and business partner of defendant Louis Eyde, the latter being married to defendant Kathleen Eyde. Defendants are currently involved in a divorce action and defendant Kathleen Eyde (hereinafter defendant) has sought discovery of certain business documents concerning the business ventures between plaintiff and Louis Eyde. Plaintiff filed the instant action to prevent the discovery of these documents, seeking to keep confidential those documents which relate to his business ventures, including those ventures in which he is involved with Louis Eyde. The trial court entered an order compelling discovery but establishing a number of safeguards designed to prevent the disclosure of confidential matters and to prevent discovery of documents which relate only to plaintiff and are not relevant to defendant's determination of the value of the marital estate in her divorce action against Louis Eyde. We affirm.

Plaintiff and Louis Eyde have substantial inter-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ests in real estate and businesses conducted in corporate, partnership, and trust forms. The Eyde brothers also have various interests in businesses as officers, directors, shareholders, and fiduciaries. Plaintiff and Louis Eyde are involved in approximately twenty different jointly owned business entities.

Defendant began discovery of Louis Eyde's assets through financial institutions. In October, 1985, defendant served subpoenas duces tecum on several financial institutions seeking copies of all applications for credit, all documents indicating original evidence of debt, payment schedules, security descriptions, credit reports, appraisals, loan committee evaluations and related documents, and all financial statements filed subsequent to January 1, 1982, "by or on behalf of Louis J. Eyde, individually, jointly, or as an officer, owner, partner or other representative of any entity with which he is associated, including but not limited to [various Eyde brothers ventures]." The subpoenas also sought all "documents showing account numbers, type of accounts, current balances, the name of authorized signatories as to all accounts of whatever nature held in the sole name of Louis J. Eyde . . . ."

On November 14, 1985, plaintiff George F. Eyde brought this suit to quash defendant's subpoenas pending a hearing. Plaintiff claimed that defendant's subpoenas violated his privacy interest in his business records and interfered with his business relations with third parties.

The parties eventually consented to two orders for confidentiality entered in both plaintiff's action and defendant's divorce action, which were entered on June 13 and 17, 1986. These orders provided that plaintiff be given advance notice of discovery requests, that plaintiff was entitled to be

present at discovery proceedings and given an opportunity to review records in advance, that plaintiff might object to and withhold documents pending a court ruling regarding their discoverability, that records be reviewed only by parties or counsel, that no confidential records be disclosed without an order of the court upon prior notice to the other parties, and that all arguments regarding confidential records be held in camera.

Defendant deposed Michigan National Bank and attempted to secure the Eyde brothers' business records held by the bank on June 24, 1986. Plaintiff and plaintiff's counsel reviewed the documents prior to the deposition. Plaintiff's attorney objected to and withheld fifty-five documents from this deposition. Eleven of these documents were personal documents solely concerning plaintiff, while the other withheld documents were financial statements relating to business projects owned by Louis Eyde. Plaintiff's counsel also prevented any testimony by the deposed bank officer regarding Louis Eyde's net worth. Plaintiff's attorney continuously objected that the loan officer's opinion would be based upon the withheld confidential business documents.

Defendant moved to compel discovery of these withheld documents on October 22, 1986. Defense counsel agreed that eleven of the documents were personal to plaintiff and need not be discovered but argued that the remaining records were relevant and not privileged because they contained financial statements relating to business projects owned by Louis Eyde. Defense counsel argued that those documents were necessary because discovered documents showed wildly different versions of Louis Eyde's net worth: a financial statement given to a lending institution and signed by Louis Eyde gave his net worth at forty-two times the net

worth stated by Louis Eyde in a financial statement given to defendant. Additionally, defendant had no description of any of the real estate owned by Louis Eyde.

On December 3, 1986, the court granted defendant's motion for discovery of the requested documents because they were relevant, reasoning that unraveling "the intricate web of complex business enterprise is not so easy without more complex discovery." The court did exclude the eleven documents which were held to be personal to plaintiff. On April 22, 1987, the court entered an order granting defendant discovery of the other forty-four requested documents. Defendant now appeals from this order.

On March 23, 1987, the court entered an order for a special master to be appointed for the purposes of receiving testimony and conducting hearings to determine the identity and value of the marital estate. The court extended discovery to June 30, 1987, and ordered that an evidentiary hearing be scheduled after that date.

At an April 23, 1987, hearing, the court extended the June 13 and 17, 1986, confidentiality orders to cover all financial information received. The court ordered that future hearings regarding financial information be held in camera or in an empty, locked courtroom, and that motions regarding financial information will be kept in a separate confidential file.

After obtaining the April 22, 1987, order to compel discovery, defendant again presented a subpoena to Michigan National Bank requesting the forty-four previously withheld documents. The deposition was set for April 30, 1987. Plaintiff sought an emergency appeal to this Court to stay the deposition. On May 1, 1987, this Court stayed the lower court's discovery order pending further

action. On May 14, 1987, this Court granted plaintiff leave to appeal and continued the stay pending appeal.

Trial courts have considerable discretion in granting or denying a motion to compel discovery. *Davis v O'Brien,* 152 Mich App 495, 505; 393 NW2d 914 (1986). A circuit court's decision to grant or deny a discovery motion will be reversed on appeal only if there has been an abuse of that discretion. *Marchand v Henry Ford Hospital,* 398 Mich 163, 169-170; 247 NW2d 280 (1976); *Ravary v Reed,* 163 Mich App 447, 456; 415 NW2d 240 (1987). In *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959),[1] the Court defined an abuse of discretion:

> [T]he result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

Michigan has a strong historical commitment to a far-reaching, open and effective discovery practice. *Daniels v Allen Industries, Inc,* 391 Mich 398, 403; 216 NW2d 762 (1974). Discovery rules are to be liberally construed in order to further the ends of justice. *Id.* The modern tendency is to broaden the scope of discovery when necessary to facilitate preparation, to guard against surprise, and to expedite justice. *Fassihi v St Mary Hospital of*

---

[1] One member of this panel, Judge KELLY, has expressed discomfiture with the fulsome language in *Spalding* and has called its definition of what constitutes an abuse of discretion "overly restrictive." *People v Holmes,* 132 Mich App 730, 750; 349 NW2d 230 (1984) (KELLY, J., concurring). He is not alone. See, for example, *People v Martin,* 147 Mich App 297, 300-301; 382 NW2d 726 (1985); *Guzowski v Detroit Racing Association, Inc,* 130 Mich App 322, 329-331; 343 NW2d 536 (1983). See also *People v Talley,* 410 Mich 378, 396-397; 301 NW2d 809 (1981) (LEVIN, J., concurring): *"Spalding's* hyperbolic statement . . . is simplistic and misleading . . . ."

*Livonia,* 121 Mich App 11, 15; 328 NW2d 132 (1982).

The general rule is that any document which is relevant and not privileged is freely discoverable upon request. *Davis, supra* at 502-504. MCR 2.302(B)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.

There is no requirement that there be good cause for discovery of relevant and nonprivileged documents. *Davis, supra* at 503-504.

Louis Eyde's business records and banking records were relevant to the subject matter involved in defendant's divorce action. The financial status of defendant's husband is material and relevant to the subject matter of defendant's divorce. *Tomlinson v Tomlinson,* 338 Mich 274, 281; 61 NW2d 102 (1953). The husband's assets in a corporation or other businesses are considered part of the marital estate. See *Villadsen v Villadsen,* 123 Mich App 472, 473-476; 333 NW2d 311 (1983). Defendant's discovery so far has been inadequate to determine the true value of Louis Eyde's assets; financial statements now in defendant's possession vary widely in their estimate of Louis Eyde's net worth. The documents already in defendant's possession do not include relevant financial information regarding all of Louis Eyde's known business entities. Plaintiff's counsel had effectively blocked any estimate of Louis Eyde's net worth by deposed bank officials. Thus, the documents at issue are relevant and necessary to determine the extent and value of defendant and Louis Eyde's marital estate.

Louis Eyde's financial records held by Michigan

National Bank are not privileged. Documents containing records of depositor's accounts are business records of the bank and are not private papers of the depositor. See *United States v Miller,* 425 US 435; 96 S Ct 1619; 48 L Ed 2d 71 (1976). There is no legitimate expectation of privacy in such bank records which would give plaintiff standing to challenge the subpoena issued to the bank. *Miller, supra* at 443; see also *Bush Development Corp v Harbour Place Associates,* 632 F Supp 1359, 1364 (ED Va, 1986).

However, despite plaintiff's lack of an expectation of privacy in bank records, the court may restrict discovery in order to prevent annoyance, embarrassment, oppression, or undue burden or expense. MCR 2.302(C). MCR 2.302(C)(8) provides that a Court may order

> that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.

The Supreme Court has held that such a protective order assuring the confidentiality of discovered materials adequately protected a party's right to privacy in those materials. *Tomlinson, supra* at 280-281. This Court favors allowing discovery of documents and allowing the court to edit any confidential information from those documents in camera; this will preserve the one party's expectation of privacy and furnish the other party with the required information. *Fassihi, supra* at 16.

Any possible interest that plaintiff has in Louis Eyde's business and financial records is protected by the circuit court's three orders for confidentiality. These orders provide notice of what will be discovered, an opportunity to view in advance and withhold documents pending a court determina-

tion of discoverability, that the documents will be held confidential and may not be copied without a court order, that hearings dealing with financial information will be held in camera or in a locked, empty courtroom, and that all motions regarding financial information will be kept in a closed, confidential file. Additionally, the court's March 23, 1987, order to appoint a special master should minimize the inconvenience of discovery for all parties. Although plaintiff does have some interest in keeping his financial information private, defendant requires that same information to determine the extent and value of the marital estate in her divorce case. Thus, the proper approach is to issue a MCR 2.302(C) confidentiality order to protect plaintiff's interests rather than to deprive defendant of adequate discovery.

In sum, the court did not abuse its discretion in ordering discovery of the withheld documents.

Affirmed. Defendant-appellee may tax costs.